**James A. RILEY, Respondent,**

v.

**Stella M. RILEY, Appellant.**

**No. WD 40944.**

Missouri Court of Appeals,
W.D.

Aug. 8, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied
Nov. 14, 1989.

James F. Crews, Jeffrey A. Keevil, Crews & Gaw, Tipton, for appellant.

Kenneth O. McCutcheon, Jr., Woolsey and Yarger, Versailles, for respondent.

Before LOWENSTEIN, J., Presiding, and NUGENT and ULRICH, JJ.

ULRICH, Judge.

Stella M. Riley appeals only those provisions of the court's decree dissolving the marriage of the parties that deny her awards of maintenance and attorney fees. She contends that, despite the failure to seek maintenance and attorney fees in her pleadings, substantial evidence was introduced during the trial to justify an award of both, and the court's failure to make such award constituted error. The judgment is affirmed in part and reversed in part and remanded.

James A. Riley filed a petition for dissolution of marriage. Stella M. Riley filed an answer denying that the marriage was irretrievably broken. Her answer did not ask for maintenance or attorney fees, and she did not amend her pleadings prior to trial.

During the trial, Mrs. Riley abandoned the position expressed in her answer that the marriage was preservable and testified that the marriage was irretrievably broken. She did not otherwise explicitly attempt to amend her pleadings to ask for maintenance and attorney fees. However, she did attempt to introduce evidence to prove her need for maintenance, to which Mr. Riley objected, and the court sustained the objection. Mr. Riley endeavored to have the court consider his objection a continuing objection to relieve him of the necessity to object to each of Mrs. Riley's attempts to introduce evidence applicable to the maintenance issue. The court declined to permit such a standing objection.

Mrs. Riley testified cursorily about her physical and emotional problems without objection by Mr. Riley. She has chronic back pain as a result of having experienced several spinal taps to treat spinal meningitis which she contracted at age two. She fell from a horse at age fourteen causing her additional back injury. She takes pain medication to alleviate her back pain. She obtains treatment for her back from a chiropractor once a week and has done so for thirteen years. She experienced a "mental breakdown" sometime during the 1960's, for which she spent eight months in a psychiatric hospital. As a patient in the hospital, she was treated with electrical shock. She experiences epileptic seizures and ingests Dilantin to treat her condition. She has a "nervous condition" and consumes tranquilizers. She has ulcers. She experienced these physical and psychological problems prior to and throughout the marriage. Additionally, she sustained physical injury when Mr. Riley struck her, breaking two ribs and her sternum and causing injury to her bronchia. The record contains no evidence of any residual effect of the injuries Mrs. Riley sustained from having been struck by Mr. Riley.

Evidence of the source of income during the marriage was introduced. Mr. Riley operated a locksmith and shoe repair business during the marriage. Mrs. Riley assisted in the business by answering the telephone, making keys, and repairing shoes and saddles. Several years ago Mrs. Riley experienced a fall that precludes her from pouring ceramic molds, an avocation that produced a modest income prior to her fall. Since her fall, she has made nine ceramic pieces. She did not work outside the home during the marriage except in the family business. Mrs. Riley has no special

training or skills to qualify her for skilled labor.

The court found misconduct on the part of Mr. Riley, which it considered in the distribution of the marital assets. Mrs. Riley was awarded the marital residence and Mr. Riley was awarded other real property. Both parties were awarded specific items of personal property, and neither party is contesting the property division.

During trial Mrs. Riley attempted to introduce additional evidence about her need for maintenance. Her attorney asked her if Mr. Riley provided financial support. Mr. Riley's counsel objected, and the court sustained the objection because the question solicited information relevant to the issue of spousal maintenance and Mrs. Riley had not requested maintenance in her pleadings.

Mrs. Riley also attempted to testify about her entitlement to attorney fees. Mr. Riley objected because Mrs. Riley had not asked for attorney fees in her pleadings, and the court allowed the testimony subject to the objection. The sum of Mrs. Riley's testimony regarding attorney fees was that she paid her two lawyers $1,550, for which they represented her at a pretrial hearing and during the trial.

■ When a party has failed to ask for maintenance by an appropriate pleading in a dissolution proceeding, an award for maintenance may be granted by the trial court when the issue of maintenance has been tried by consent of the parties, or when substantial evidence relevant to the issue has been introduced. *Samuels v. Samuels,* 713 S.W.2d 865, 870 (Mo.App. 1986); *Goodrich v. Goodrich,* 667 S.W.2d 39 (Mo.App.1984). Mrs. Riley did not ask for maintenance in her answer, nor did she ever conventionally seek to amend her answer and request maintenance. Mrs. Riley's failure to amend her answer by appropriate rule to ask for maintenance necessitates a review of the record to determine whether the issue of maintenance was tried by consent of the parties.

Mr. Riley objected to Mrs. Riley's initial effort to introduce evidence regarding her need for maintenance, and the court sustained Mr. Riley's objection because Mrs. Riley had not asked for maintenance in her pleadings. The trial court rejected Mr. Riley's request that the court recognize a continuing objection to questions asked of Mrs. Riley relevant to the issue of maintenance and informed Mr. Riley that he must continue to object to questions regarding Mrs. Riley's need for maintenance to preserve his position. However, Mr. Riley did not object to numerous questions Mrs. Riley was subsequently asked by her counsel relevant to and bearing upon maintenance. Testimony of her physical maladies and their treatment, her emotional state, her lack of marketable training or education, and her work experience was introduced without objection. Much testimony relevant to whether Mrs. Riley should be awarded maintenance was introduced by Mrs. Riley's testimony.[1]

---

1. Examples of some of the questions asked Mrs. Riley by her attorney without objection and her answers in response relevant to and bearing upon her need for maintenance included:

   Q. You testified that you are not in good health; is that correct?
   A. Yes.
   Q. And can you tell me what the conditions that are not healthy?
   A. I have nerves that are not good. I have back injuries.

   ....

   A. ... I have back injuries from different things. Well, the back injuries go back to where I was just two years old when I had spinal meningitis. They gave me 35 spinal taps, and they ruined my back. I've had a fall off a horse at the age of 14....

   Q. ... Do you take medication for your back?
   A. Yes, I do. I take pain pills at all times.
   Q. ... Is the pain constant?
   A. Yes.
   Q. Could you tell me whether or not you can do manual labor?
   A. No.
   Q. Have you during the course of the marriage ever been able to perform manual labor?
   A. No.
   Q. And can you tell me—You said you had a nerve condition?
   A. Yes. It—It has to do with spinal meningitis and to a mental breakdown; ... I spent eight months in a mental hospital, and they did electrical shock treatments on me, which

■ Failure to object to evidence offered beyond the scope of the pleadings results in automatic amendment of the pleadings to conform to the evidence and is a consent to try the applicable issues. Rule 55.33(b); *Sparks v. Consolidated Aluminum Co.,* 679 S.W.2d 348, 353 (Mo.App.1984); *Arnett v. Venters,* 673 S.W.2d 67, 72 (Mo.App. 1984). Mr. Riley's failure to object to questions soliciting Mrs. Riley's answers regarding her need for maintenance constituted an implied consent to try the maintenance issue, and Mrs. Riley's responses to the questions resulted in an automatic amendment to her answer.

■ Because Mrs. Riley's answer was amended by implied consent, whether Mrs. Riley should receive maintenance became an issue to be adjudicated by the trial court. The trial court's denial of maintenance to Mrs. Riley because she did not ask for maintenance in her pleadings failed to apply the rule of law recognized in *Sparks,* that a failure to object to evidence offered beyond the scope of the pleadings results in automatic amendment of the pleadings to conform to the evidence and is a consent to try the applicable issue. The basis for the court's ruling denying maintenance is clearly an erroneous application of the law and cannot be sustained on review. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The evidence introduced is relevant to whether Mrs. Riley should receive maintenance. However, because additional relevant evidence was excluded, the maintenance issue was not fully addressed. The evidence presented is insufficient by itself for the court to exercise its discretion without resorting to conjecture. Additional opportunity must be offered both parties to offer evidence relevant to the issue.

■ The trial court denied Mrs. Riley attorney fees because she failed to ask for attorney fees in her pleadings. Mrs. Riley attempted to introduce evidence regarding payment of her attorney fees, Mr. Riley objected, and the court permitted Mrs. Riley to testify regarding her payment of attorney fees subject to the objection. The record does not support a contention that Mr. Riley expressly or implicitly consented to try the issue of whether Mrs. Riley should be awarded attorney fees. The court's denial of attorney fees because Mrs. Riley failed to ask for attorney fees in her pleadings is not clearly erroneous.

That portion of the judgment denying Mrs. Riley attorney fees is affirmed. That portion of the judgment denying Mrs. Riley maintenance is reversed, and the case is remanded for further proceedings as appropriate to permit the parties to introduce evidence and for the court's judgment pertaining to the maintenance issue pursuant to § 452.335, RSMo 1986. To provide the

causes me to have epileptic seizures on me now.

....

Q. Do you take medication for seizures?
A. Yes, I do.
Q. What medication do you take?
A. Dilantin.

....

Q. .... Have these—Have these conditions continued throughout the marriage?
A. Yes, I had them before we were married, and they continued all the way through this marriage. He knew I was sick before he married me.
Q. Okay. And he has supported you throughout this marriage as a locksmith; is that correct?
A. Yes.
Q. And can you tell me what you did around the business?
A. I answered the phone. I cut keys. I did shoe repair. I put heels on. I did sew jobs. I worked on people's saddles when they brought them in.

....

Q. And I believe there's been some testimony that you have a ceramics shop, too?
A. I have ceramic hobbies in the back.... But I have not poured a thing for five years because of the fall I took in the alleyway on ice.

....

Q. Have you ever worked out during the course of the marriage?
A. No, I have not, just in the shop.

....

Q. Mrs. Riley, what's your educational background?
A. None. Just what I do in the shop.
Q. Okay. Have you been specifically trained for anything?
A. No.

trial court latitude in determining an equitable result, that portion of the court's judgment distributing the marital property is also reversed and remanded so that a maintenance award may be "consistent with economic considerations flowing from the property dispositions." *Parker v. Parker*, 744 S.W.2d 469, 472 (Mo.App.1987); *S.R. v. S.M.R.*, 709 S.W.2d 910 (Mo.App. 1986).

All concur.